UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ALBIRIO D. MIRABAL and                                                          No. 23-10862-t13
TERI L. MIRABAL,

      Debtors.

## OPINION

Debtors have claimed a state law homestead exemption on their house in this chapter 7 case. Pursuant to § 522(f),[1] Debtors have moved to avoid two judgment liens allegedly impairing the homestead exemption. An evidentiary hearing on the § 522(f) motions has not been held, but the parties have raised the legal issue whether the Court can deny the motions if it finds that the judgments arose from Debtors' fraudulent conduct. The Court, having reviewed the case and statutory law on the issue, concludes that it lacks the power to deny the § 522(f) motions on the basis that the underlying debts were procured by fraud.

A.    Facts.[2]

For purpose of ruling on the legal issue, the Court finds:

Margaret and Hank Vigil obtained a judgment against Debtors for $322,819.10. The Vigils filed a transcript of the judgment in Bernalillo County, New Mexico on October 17, 2022, creating a lien on the Debtor's house, which has a street address of 14409 La Cueva Ave. NE, Albuquerque, Bernalillo County, NM 87123 (the "La Cueva House").

---

[1] Unless otherwise indicated, all statutory references are to 11 U.S.C.
[2] The Court takes judicial notice of its docket in this case. *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

On April 11, 2023, Lorenzo and Megan Mora obtained a judgment against Mr. Mirabal for $81,680. The Moras filed a transcript of the judgment in Bernalillo County, New Mexico on April 18, 2023.[3]

This bankruptcy case was filed under chapter 13 on September 29, 2023, and was converted to a chapter 7 case on May 21, 2024.

Debtors listed the La Cueva House on their original bankruptcy schedules with an "unknown" value. Debtors claimed the federal exemptions but did not assert a homestead exemption for the La Cueva House. No liens or mortgages on the house were scheduled.

Debtors amended their schedule A on October 25, 2023. They valued the La Cueva House at $580,000. Their amended schedule D, filed the same day, disclosed the Lienholders' judgment liens on the La Cueva House, as well as a $323,160 first mortgage.

Debtors amended their schedule C on June 19, 2024, switching from the federal to the state exemptions and claiming a $256,840 homestead exemption for the La Cueva House.

On October 2, 2024, Debtors filed two motions to avoid the Lienholders' judgment liens on the La Cueva House under § 522(f) of the Bankruptcy Code, asserting that the liens impaired Debtors' homestead exemption.

The Moras objected to the lien avoidance motion on October 2, 2024, arguing that the challenged lien "sounds in fraud" and asking the Court to deny all relief.

On the same day the Vigils objected to the lien avoidance motion directed against them, arguing, inter alia, that the "Debtors cannot and should not be allowed to avoid the judicial lien that was obtained on [the La Cueva House] due to the debt being the result of fraud."

---

[3] The Vigils and the Moras are sometimes referred to as the "Lienholders."

At a preliminary hearing on the motions, held November 15, 2024, the Lienholders renewed their argument that Debtors should not be allowed to use § 522(f) to avoid judicial liens that secure claims arising from fraud.

The parties have asked the Court to rule on the legal issue. The Court makes no ruling on the merits of the fraud arguments.

B.  Section 522(f).

Section 522(f) provides in relevant part:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
>    (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5); or
>    (B) a nonpossessory, nonpurchase-money security interest in any--
>      (i) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
>      (ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
>      (iii) professionally prescribed health aids for the debtor or a dependent of the debtor.
>    (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
>      (i) the lien;
>      (ii) all other liens on the property; and
>      (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>    (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.
>    (C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.
> . . . .

Section 522(f) permits a debtor to avoid a judicial lien if it impairs a homestead exemption, such as the exemption claimed by Debtors under N.M.S.A. § 42-10-9(B)(1). *See, e.g., In re*

*Hamilton*, 461 B.R. 878, 883 (Bankr. D.N.M. 2011) (discussing the New Mexico homestead exemption and § 522(f)).

Under the Bankruptcy Code, the only requirements for lien avoidance are those found in § 522(f). To meet the statutory requirements, Debtors must prove the existence of a judicial lien; that the lien impairs their homestead exemption; and that they possessed the homestead property when the lien attached. *See Farrey v. Sanderfoot*, 500 U.S. 291, 295-96 (1991). Leaving the subject judicial liens in place, as the Vigils and the Moras advocate, effectively would deny Debtors their right to the homestead exemption.

C.  <u>The Moras and the Vigils Argue for an Exception if the Judicial Lien Secures a Debt Procured by Fraud</u>.

The Moras and the Vigils contend that the Court has the power to deny Debtors' motions to avoid their judgment liens under § 522(f) because the liens secure claims that arose from Debtors' fraud. They do not cite any statutory or case law support for such a fraud exception.

The United States Supreme Court addressed a similar argument in *Law v. Siegel,* 571 U.S. 415 (2014). It ruled that the Bankruptcy Code does not confer "a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct." *Id.* at 425.

> A bankruptcy court has statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). And it may also possess "inherent power ... to sanction 'abusive litigation practices.'" *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 375–376, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). But in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions.
> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere. See *Morton v. Mancari,* 417 U.S. 535, 550–551, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974); *D. Ginsberg & Sons, Inc. v. Popkin,*

285 U.S. 204, 206–208, 52 S. Ct. 322, 76 L. Ed. 704 (1932). Courts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions. *Degen v. United States,* 517 U.S. 820, 823, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 47, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 85 U.S. 197, 206, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1988); see, *e.g., Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 24–25, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000); *United States v. Noland,* 517 U.S. 535, 543, 116 S. Ct. 1524, 134 L. Ed. 2d 748 (1996); *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S. Ct. 1044, 84 L. Ed. 1293 (1940).

571 U.S. at 420-421 (footnote omitted).

The 10th Circuit summarized *Siegel*'s effect on § 522(f) lien avoidance:

*Siegel* recognized that a bankruptcy court has broad equitable powers under § 105 "to issue any order ... necessary or appropriate to carry out the provisions of the Bankruptcy Code" and has "inherent power to sanction abusive litigation practices." 134 S.Ct. at 1194 (ellipsis and internal quotation marks omitted). But it also said any equitable powers possessed by "the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code," *id.* (internal quotation marks omitted), and "§ 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate," *id.* at 1196. "[T]he court may not refuse to honor the [ § 522] exemption absent a valid statutory basis for doing so," nor may it add exceptions not found in the statute. *Id.* The Court noted that bankruptcy courts retain "authority to respond to debtor misconduct with meaningful sanctions[,]" including authority to deny a dishonest debtor discharge, *id.* at 1198, but made clear that "federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code," *id.* at 1197 (emphasis omitted).

*Clabaugh v. Grant (In re Grant),* 658 Fed. App'x. 411, 414 (10th Cir. 2016). For other decisions consistent with *Clabaugh*, see *Rockwell v. Rockwell (In re Rockwell)*, 968 F.3d 12, 19 (1st Cir. 2020) (citing *Siegel*, the court held it was prohibited from infringing on debtor's "fresh start" by denying exemptions); *Rucker v. Belew (In re Belew),* 943 F.3d 395, 396 (8th Cir. 2019) ("Because bad faith is not listed among the 'carefully calibrated exceptions' in § 522, the [Supreme] Court concluded general powers could not be used to recognize a bad faith exception not listed in the specific, detailed provisions of that section."); *Ellman v. Baker (In re Baker),* 791 F.3d 677 (6th Cir.

2015) ("[I]t is clear that *Siegel* prohibits the bankruptcy court from disallowing the debtors' claimed exemptions because of their alleged bad faith and fraudulent conduct."); *Elliott v. Weil (In re Elliott),* 544 B.R. 421, 432 (9th Cir. BAP 2016) ("*Law v. Siegel* abrogated our authority to deny exemptions or amendments to exemptions based on a debtor's bad faith."); *Gray v. Warfield (In re Gray),* 523 B.R. 170, 174 (9th Cir. BAP 2014) ("[T]he Bankruptcy Code does not grant bankruptcy courts the 'authority to disallow an exemption …' based on a debtor's misconduct."); *In re Bushey,* 559 B.R. 766, 775-776 (Bankr. D.N.M. 2016) ("The Bankruptcy Code does not confer any general, equitable power in the bankruptcy court to deny a debtor's exemptions based on bad-faith conduct."); *In re Jacobs*, 662 B.R. 376, 385 n.37 (Bankr. N.D. Okla. 2024) (same); *In re Guzman*, 660 B.R. 149, 156 (Bankr. D. Colo. 2024) (to the same effect); *In re Bentley*, 622 B.R. 296, 302 (Bankr. W.D. Okla. 2020) (the court cannot use general equitable powers to deny exemption claims as a result of Debtor's alleged bad faith conduct); *In re Schepmann*, 2020 WL 714414 (Bankr. D. Kan. 2020) (citing *Siegel*, the court held that it may not condition debtor's right to amend a homestead exemption claim on debtor's good faith); *In re Stewart*, 2017 WL 3575698, at *6 (Bankr. W.D. Okla.) (Bankruptcy Code does not confer a "general equitable power in bankruptcy courts to deny exemptions based on debtor's bad faith conduct"); *In re Liao,* 553 B.R. 584, 603 (Bankr. S.D. Tex. 2016) ("[T]here is no equitable power under federal law to stop the Debtor, however unsavory his conduct has been, from exempting the [homestead]."); *see generally* 4 *Collier on Bankruptcy,* ¶522.12[7] (16th Ed.) ("Following the decision in *Law v. Siegel,* courts have concluded that they may not use their equitable powers to deny a debtor the right to amend exemptions based on bad faith or other misconduct.").

To deny Debtors' § 522(f) motions because the subject judicial liens allegedly secure debts procured by fraud would run afoul of *Siegel* and *Clabaugh*, by which the Court is bound, as well

as the other authority cited above.[4] To rule in the Lienholders' favor the Court would have to use its § 105 powers to create an equitable exception to § 522(f) not found in the Code. The case law discussed above prohibits the Court from doing so.

Further, defrauded creditors (secured and unsecured) have the right under § 523(a)(2) to have their debts declared nondischargeable. Between *Law v. Siegel* and § 523(a)(2), the Court holds that the Lienholders' argument under § 522(f) must be overruled.

CONCLUSION

The Court lacks the legal and equitable power to deny the Debtors' § 522(f) lien avoidance motions based on Debtors' alleged fraud in creating the underlying claims. The Court will enter separate orders consistent with the foregoing.

---

[4] *Law v. Siegel* holds: "It is of course true that when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption. 571 U.S. at 425. New Mexico has case law on this issue. *See, e.g., Coppler & Mannick, P.C., v. Wakeland*, 138 N.M. 108 (S. Ct. 2005) ("When malicious, fraudulent, or intentional tortious conduct involves the homestead itself, we believe that the Legislature did not intend for the debtor to gain from this conduct by receiving the exemption; under these limited circumstances, we believe that courts have the power to impose an equitable lien against the homestead exemption."); and *Grygorwicz v. Trujillo*, 145 N.M. 650, 653 (S. Ct. 2009) (distinguishing *Wakeland*). Thus, New Mexico law could provide creditors relief from a claimed state homestead exemption in the rare instances in which a debtor's "malicious, fraudulent, or intentional tortious conduct involve[d] the homestead itself." *Grygorwicz*, 145 N.M. at 653.

-7-
Case 23-10862-t7    Doc 151    Filed 12/02/24    Entered 12/02/24 10:00:07 Page 7 of 8

_____

Hon. David T. Thuma
U.S. Bankruptcy Judge

Entered: December 2, 2024
Copy to: Counsel of Record